United States District Court
Southern District of Texas
**ENTERED**
April 17, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Zondria McKinney,  §  <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> City of Missouri City, § <br> *Defendant*. § | Civil Action H-23-916 |

## MEMORANDUM AND RECOMMENDATION

This employment discrimination case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 29. Pending before the court are Defendant City of Missouri City's (the City) Motion for Summary Judgment, ECF No. 56, and Plaintiff's Motion for New Trial, ECF No. 63. Also on the court's docket is Plaintiff's letter requesting a speedy trial. ECF No. 62. The court recommends that the City's Motion for Summary Judgment be **GRANTED**, and that Plaintiff's Motion for a New Trial be **DENIED**.

Because the Equal Opportunity Commission (EEOC) and its investigator have not been served, the court recommends that Plaintiff's claims against them be **DISMISSED without prejudice**.

### *1. Background*

Zondria McKinney filed this lawsuit on March 13, 2023, naming the City as the only Defendant. ECF No. 1. She alleged that she was the only African American employee working in the City's Permit Office to be singled out to clock in and out every day, including at lunch. *Id.* at 2. She included the EEOC's notice of right to sue as an exhibit to her Original Complaint. *Id.* at 4.

McKinney amended her complaint on May 18, 2023. ECF No. 4. She added as defendants three City employees,[1] the EEOC, and the EEOC's investigator. *Id.* at 2–3. She alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, based on racial harassment, discrimination and retaliation. *Id.* at 4–5. McKinney's Amended Complaint is somewhat disjointed and difficult to understand at times. Because McKinney is proceeding pro se, the court will liberally construe her Amended Complaint. Thus, the court will summarize and describe the relevant allegations in the complaint as well as the various attachments included therein.[2]

The Amended Complaint was submitted on a form titled "Complaint for Employment Discrimination," to which McKinney added in handwriting "Harassment/Retaliation." ECF No. 4 at 1. She checked the box next to Title VII in response to the prompt asking under which statute she was bringing suit. *Id.* at 4. In response to a prompt asking about the discriminatory conduct about which she was complaining, she checked the boxes corresponding to termination of employment, unequal terms and conditions of employment, and retaliation. *Id.* at 5. She again interlineated the words "harassment" and "retaliation" on that same page. *Id.* She checked the "race" box as the reason for her employer's discrimination. *Id.* Next to that box, she wrote in "only African American Permit & Inspections City Employee singled out within the workplace." *Id.* On an attached page she states that the human resources director finished his investigation without examining any of McKinney's evidence. *Id.* at 6. She also mentions

---

[1] Judge Hittner dismissed all claims against the individual Defendants before the case was referred to the undersigned magistrate judge. ECF No. 12.

[2] Because the EEOC and its investigator should be dismissed for lack of service, the court has omitted discussion of the allegations related to those Defendants.

2

that her supervisors issued two performance improvement plans in June 2022. *Id.* About those, she states that "Both PIP's forced [her] to continue performing the act I reported to HR & to the EEOC (clock in & out all day)." *Id.* She states she was fired on June 27, 2022. *Id.*

Next attached to the Amended Complaint is a type-written description of some discussions McKinney had with various employees about the clocking in and out policy. ECF No. 4 at 9. She describes a person named "Keehren" coming into the office and asking whether everyone in the office was required to clock in and out every day. *Id.* Others in the office said they were not required to do so, which McKinney found shocking. *Id.* McKinney describes feeling "a heavy weight of discrimination come over [her]." *Id.* She felt singled out and stated that the "concealment of harassment was unfair and unjust." *Id.* She then describes a series of discussions with "Tami," apparently Defendant Tami Gertz, and Keehren. McKinney alleges that Gertz told her not to speak to Keehren, that everything was to go through Tami, and that Tami would tell "Jennifer," which appears to refer to Defendant Jennifer Thomas-Gomez. *Id.* McKinney describes these conversations as hostile. *Id.*

McKinney next attached what appears to be part of a complaint that she submitted to the City relating to Gertz's actions discussed above. ECF No. 4 at 10. It is mostly conclusory and contains no factual details beyond those described above.

Also attached is a typewritten narrative of events. In it, McKinney alleges that when she was first hired, "things were great." ECF No. 4 at 11. When the pandemic occurred, she was allowed to work from home. *Id.* She alleges that she was getting her work done from home, but that "[Gertz] hated that [she] was working from home." *Id.* Gertz complained about McKinney's work from home and made working from home difficult for McKinney.

3

*Id.* According to McKinney, Gertz would call her several times a day, and would accuse her of not working. *Id.* McKinney alleges that Gertz's actions, in conjunction with outside family stressors, caused her to lose memory of her job duties. *Id.* According to McKinney, when the pandemic had subsided and all employees had returned to work, she "had lost memory of [her] job, due to all the harassment & stress [she] was put under by [Gertz]." *Id.* at 11. A person named "Kirk" told Gertz to train McKinney, but Gertz failed to do so. *Id.* New employees came to the office and McKinney was "not allowed to learn with them." *Id.*

McKinney attached to her Amended Complaint a letter to her from the City acknowledging her March 4, 2022 complaint about having to clock in and out. ECF No. 4 at 12. The City explained that "this directive to clock in and out every day originated from past supervisors who are no longer employees of the City." *Id.* The City therefore could not substantiate her claim. *Id.* McKinney included emails appearing to show her clocking in and out. ECF No. 4 at 13–14.

McKinney attached a Performance Improvement Plan dated June 16, 2022. ECF No. 4 at 17. The "goal" of the plan was "[t]o provide responsive, efficient service; complet[e] assigned tasks within the timeline established; to respond to status updates in accordance with stated timeframes; to reduce delays in scheduling and remaining steps in processing." *Id.* Some of the "assignments to achieve to improve performance" included compliance with attendance requirements, checking voicemail and messages, and completing duties on time. *Id.* McKinney was supposed to show improvement by July 18, 2022. *Id.*

McKinney attached her June 27, 2022 termination letter as well. ECF No. 4 at 21. The letter cites "Employee Conduct (Work Standards)" as the reason for her termination. *Id.*

4

The last relevant attachment appears to be a response to a Freedom of Information Act request describing McKinney's allegations. ECF No. 4 at 23. In addition to most of the allegations mentioned above, the allegations include the statement that McKinney was the only African American employee in the permit office and that she was the "only employee in the permit office who was singled out to clock in and out everyday, all day for almost a year." *Id.* She also alleged that the City's investigation of her complaints was inadequate and that she was not allowed an opportunity to present evidence. *Id.* She stated that four days after she filed her EEOC complaint, the City retaliated by placing her on a performance improvement plan and shortly thereafter firing her. *Id.*

The City's version of the facts is set forth in its Motion for Summary Judgment.[3] On August 20, 2018, the City hired Plaintiff as a Permit Service Representative I ("PSR I"). Her job was to process permits, payments, and other documents. She was terminated on June 27, 2022, for poor work performance, attendance issues, and failure to attend a mandatory training session.

Because of the pandemic, the City states it allowed McKinney and other qualified employees to work remotely in May 2020. According to the City, Plaintiff's work product declined after she started working from home. The City was uncertain whether McKinney was actually working when not in the office. McKinney also failed to provide daily status reports about her work, which was required under the City's telecommuting policy. The City decided that McKinney would be required to work in the office a few hours a day.

---

[3] As will be discussed below, McKinney did not respond to the Motion for Summary Judgment. Therefore, the court takes the facts set forth in the Motion as undisputed.

On June 4, 2020, Tami Gertz, the City's Permit Review Coordinator, sent McKinney an email stating that McKinney would be required to work from home between 8:00 a.m. and 1:30 p.m. She would have a lunch break between 1:30 p.m. and 2:30 p.m. McKinney would then be required to work in the office between 2:30 p.m. and 5:00 p.m. The email also stated that McKinney was to send her work hours to Gertz and Kirk Allen in the event she was not logged in and working during the set work hours.

According to the City, McKinney failed to work her set schedule. She also continued to make mistakes processing permits and payments, which had a negative impact on the City's permit office and other City departments. The City learned on August 20, 2020, that McKinney placed into review several residential and commercial irrigation permits that were weeks old and which Plaintiff did not complete or review. According to the City, such mistakes were ongoing for months and caused delay and dysfunction within the City's permit office.

Because of McKinney's failure to comply with the set work schedule and to improve her work performance, Allen wrote her up on August 7, 2020. Over the next year, Plaintiff's work performance and attendance did not improve. McKinney received a total rating of 2.78 on her performance review for the period between October 1, 2020 and September 30, 2021. That rating meant that McKinney was required to improve her work performance. According to McKinney's supervisors, she had shortcomings in timely completing tasks, continued to have attendance problems, and was unable to understand the permit office's processes and procedures. McKinney was unable to complete tasks independently. According to the City, McKinney also had a poor performance review for the period between

October 1, 2018 and September 30, 2019. Her rating during that time was 2.53.

According to the City, McKinney's performance did not improve. The City states that McKinney disregarded attempts by Gertz, other supervisors, and her co-workers to provide her with instruction and assistance in performing her assignments. Thus, the City's Development Services Director, Jennifer Thomas-Gomez, wrote McKinney up a second time on June 16, 2022. As before, the second write-up documented McKinney's poor work performance and attendance issues.

As mentioned, due to McKinney's poor work performance and attendance issues, the City required her to clock in and out for work on a regular basis, including lunch. McKinney was not the only employee required to clock in and out, however. The City states that it hired Vanessa Jimenez in the fall of 2020 for the same position that McKinney held. Similar to McKinney, Jimenez was required to clock in and out, even for lunch, if she was not working her set schedule. That requirement continued throughout the time that McKinney's and Jimenez's employment overlapped. The City states that Jimenez's clocking in and out requirement was not based on disciplinary history. Others holding the same position as Plaintiff were also required to clock in and out. Those employees included Navita "Tiffany" Goonie and Renee "Christine" Dunlap, neither of which had a disciplinary history.

On March 4, 2022, McKinney submitted a written complaint to the City human resources director, Martin Russell. She alleged that she was being harassed and discriminated against because she was required to clock in and clock out. She claimed that other employees did not have the same requirement. The City's investigation into the complaint concluded by April 12, 2022. The City did not find evidence to substantiate the complaint.

7

The entire permit office was required to attend a mandatory training session on June 25, 2022. The training session had been scheduled for several weeks. McKinney did not notify her supervisors that she would not attend the session until the morning of the day prior to the session. Gertz told McKinney in an email that the session was mandatory for McKinney and all other employees in her position. McKinney did not attend the session. Her absence had not been approved.

Because McKinney missed the training, on June 27, 2022, Thomas-Gomez emailed Russell that the City should fire McKinney. The same day, Russell told McKinney that she was being fired for poor performance and her unexcused absence from the training. McKinney did not appeal the City's decision to fire her.

The City learned after it had already fired McKinney that McKinney had a June 10, 2022 interview with the EEOC. McKinney missed that interview and rescheduled it for June 13, 2022. The EEOC rescheduled the interview to September 8, 2022. On September 17, 2022, Plaintiff filed a charge of discrimination with the EEOC. The City states that no one at the City knew McKinney had contacted the EEOC before the City was notified about the September 17, 2022 charge of discrimination, which was well after McKinney had already been fired.

### 2. Legal Standards
#### A. *Failure to Respond to a Motion for Summary Judgment*

After the City filed its Motion for Summary Judgment, McKinney filed two documents. The first was docketed as a letter "Requesting Speedy Trial." ECF No. 62. That letter states, in its entirety:

> Judge Hittner, Due to Plaintiff being put in Duress
> over & over again by the City of Missouri City & their

> Attorneys, a <u>speedy trail [sic] is what I'm requesting.</u> I'm Zondria McKinney, African American, former City of Missouri City Employee, Witness, Victim to Discrimination/Harassment/Retaliation by the City of Missouri City. As a witness/victim I can no longer be subject to Harassment Duress & Retaliation by them. Please assign a <u>speedy trail [sic] date</u> with my <u>original Judge ASAP.</u>

*Id.* (emphasis in original). The second document is a Motion for New Trial. ECF No. 63. In the motion, McKinney expands on what she said in her letter. She states that she is a victim of discrimination and harassment. *Id.* at 1. She complains about how this litigation has been conducted. For example, she complains that she has been put through stress and complains that she was required to sit for her deposition, which caused her duress. *Id.* She reiterates her request for a speedy, fair, and constitutional trial. *Id.* at 1–2. As it relates to the facts of this case, the only information she provides is that she is "the only one, African American, still being harassed, intimidated kept in duress by the City of Missouri City over and over again." *Id.* at 1.

McKinney did not file a formal response to the motion for summary judgment. The court will consider the two documents described above to be McKinney's attempt to respond. Unfortunately, McKinney has provided no facts or arguments to rebut the City's motion. Her complaints about the conduct of this litigation are unfounded and have nothing to do with the merits of the City's pending motion. McKinney has failed to respond to any of the legal or factual points raised in the motion.

In the Southern District of Texas, a failure to timely respond to a motion is taken as a representation of no opposition. S.D. Tex. L.R. 7.4. However, a dispositive motion should not be granted simply because there is no opposition, even if failure to oppose violated a local rule. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360,

362 n.3 (5th Cir. 1995). Instead, the court may accept the unopposed facts set forth in the motion as undisputed. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (affirming the district court's acceptance of the facts in support of the defendant's summary judgment motion as undisputed, where the plaintiff made no opposition to the motion); *Smith v. AZZ Inc.*, No. 20-cv-375-P, 2021 WL 1102095, at *1–3 (N.D. Tex. Mar. 23, 2021) (citing *Eversley*, 843 F.2d at 174) (taking as true the facts set forth in the moving party's motion for summary judgment).

### *B. Summary Judgment*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim."). Although the court needs to consider only the cited evidence, it is allowed to consider other materials in the summary judgment record. Fed. R. Civ. P. 56(c)(3).

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Analysis
#### i. Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When based on circumstantial evidence, as here, such claims are analyzed under the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Saketkoo v. Adm'rs. of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008).

11

The burden-shifting approach places the initial burden on the plaintiff to establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the plaintiff establishes a prima facie case, the defendant must respond by "articulat[ing] a legitimate, non-discriminatory reason for its employment action[,]" and, if the defendant does so, "the ultimate burden shifts back to the plaintiff who must then prove that the employer's proffered reason is merely a pretext for a real discriminatory purpose." *Terry v. Fed. Bureau of Prisons*, No. 23-50130, 2023 WL 4196865, at *4 (5th Cir. June 27, 2023).

To establish a prima facie case of race discrimination with circumstantial evidence, McKinney must show that she (1) is a member of a protected group, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside her protected group or was treated less favorably than other similarly situated employees outside her protected group. *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021).

McKinney is an African American female and is thus a member of a protected group. She was fired, which is an adverse action. She also appears to be arguing that having to clock in and out was an adverse employment action. The court doubts that having to clock in and out is an adverse employment action, but assumes it is for the sake of this discussion. The problem with McKinney's case is that she cannot show that she was treated less favorably than similarly situated employees outside her protected group.

The City presents evidence that other employees, even those without disciplinary histories were required to clock in and out, albeit not as often as McKinney. McKinney states without evidence that she was the only person required to clock in and out. The City's unrebutted statement of facts is to the contrary. In any

event, the record does not identify any person with the same job and disciplinary history as McKinney who was not required to clock in and out. McKinney's conclusory statements to the contrary are insufficient to raise a fact issue. McKinney also presents no evidence that a similarly situated person who missed a mandatory meeting was not fired.

Assuming for the sake of discussion that McKinney could establish her prima facie case, the City has presented evidence that McKinney was fired based on performance and missing the meeting. The City has also presented evidence that McKinney was required to clock in and out due to performance and attendance issues. These are legitimate non-discriminatory reasons for the City's actions. Thus, the burden shifts to McKinney to present evidence sufficient to establish a genuine issue of material fact about whether the City's asserted reason for her termination and clocking in and out requirement were pretext for discrimination. *Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 826 (5th Cir. 2022); *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 704 (5th Cir. 2024). The evidence must allow fair-minded factfinders to reach different conclusions about whether the City's proffered reason was, in fact, the reason for McKinney's disparate treatment. *Owens*, 33 F.4th at 826 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)). A plaintiff can meet her burden to show pretext with circumstantial evidence, including evidence of disparate treatment or evidence tending to show that the employer's explanation is unworthy of credence. *Id.* But the ultimate determination is whether, viewing all the evidence in a light most favorable to the plaintiff, a reasonable factfinder could infer discrimination. *Id.* (citing *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

McKinney has failed to meet her burden. She has presented no evidence to show that she did not miss the meeting. She did not

present any evidence that others who missed the meeting were not fired. She has presented no evidence to show that she did not have performance and attendance issues requiring her to clock in and out. There is no evidence whatsoever that the City's actions in this case were based in any way on McKinney's race.

The City's motion for summary judgment on McKinney's discrimination claim should be **GRANTED**.

### ii. *Hostile Work Environment/Harassment*

Title VII is not intended to protect employees from difficult places to work or erroneous or arbitrary employment decisions. Title VII is only intended to protect employees from employment decisions that are *motivated by discrimination. See Kraft v. Univ. of Tex. Med. Branch*, 775 F. App'x 159, 161 (5th Cir. 2019) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones.")); *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)) ("[T]he court does not 'engage in second-guessing of an employer's business decisions.'").

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (omitting internal quotation marks). To establish a Title VII hostile work environment claim, the plaintiff must show that she (1) is a member of a protected group; (2) suffered unwelcome harassment; (3) the harassment was based on her membership in the protected group; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial

action. *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 640 (5th Cir. 2014).

McKinney has presented no evidence that she was subjected to any kind of racial harassment. Her harassment claim appears to be based on the requirement that she clock in and out. She also complains that her supervisors were critical of her work. There is no evidence that that the clocking in and out requirement was imposed because of her race. The only evidence in the case is that the requirement was imposed for reasons other than her race. McKinney has presented no evidence that there were references to her race, that she was criticized as a proxy for her race, or that her race otherwise played any role in her supervisors' treatment of her. The City's motion for summary judgment on this claim should be **GRANTED**.

### iii. Retaliation

"A plaintiff's ultimate burden in the retaliation context is to prove that but-for the employer's improper retaliatory motive, the allegedly retaliatory employment action would not have occurred." *Etienne*, 778 F.3d at 488. A plaintiff can discharge this burden with direct or circumstantial evidence. *Manaway v. Med. Ctr. of Se. Tex.*, 430 F. App'x 317, 324 (5th Cir. 2011). When based on indirect evidence, a claim for retaliation is analyzed under the *McDonnell Douglas* framework. *Wheat v. Florida Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). To establish a prima facie case for retaliation, McKinney must show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two. *Saketkoo*, 31 F.4th at 998-1000.

McKinney complained about the clocking in and out requirement and appears to have claimed that the requirement was a form of harassment. Assuming that the requirement was an adverse action, there is no connection between the requirement

15

and her complaint about it. Obviously, the complaint about the requirement was made after the requirement was imposed, so it is difficult to see how the requirement could have flowed from the complaint. McKinney cannot prove her prima facie case as it relates to the clocking in and out requirement.

The court turns to whether McKinney's firing was retaliatory. McKinney complained about the clocking in and out requirement on March 4, 2022, but was not fired until June 27, 2022, which was nearly four months later. Courts have indicated that only three months between the protected activity and adverse employment action is too long to support a causal connection at the prima facie stage of the analysis. *Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1001 n.7 (5th Cir. 2022) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). McKinney went to the EEOC before she was fired but filed her formal complaint after she was fired. The City's unrebutted facts show that no one with the City had knowledge that McKinney had contacted or complained to the EEOC until after she was fired. Thus there can be no causal connection between her complaint to the EEOC and her firing. McKinney cannot show her prima facie case of retaliation.

Assuming McKinney could satisfy her prima facie burden, again, the City has presented evidence that McKinney was fired based on performance and missing the meeting. The City has also presented evidence that McKinney was required to clock in and out due to performance and attendance issues. These are legitimate non-discriminatory reasons for the City's actions. The burden thus would shift to McKinney to show pretext, which turns on whether the protected conduct "was a 'but for' cause of the adverse employment decision." *Owens*, 33 F.4th at 835 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)). "[E]ven if a plaintiff's protected conduct is a substantial element in a

16

defendant's [adverse employment action], no liability for unlawful retaliation arises if the employee would have [undergone that action] even in the absence of the protected conduct." *Long*, 88 F.3d at 305 n.4 (citation omitted).

McKinney cannot show that she would not have been required clock in and out but for her complaint. The requirement was based on her attendance and performance problems. McKinney has presented no evidence to show that the requirement would not have been placed on her had she not made a complaint. McKinney was fired because of performance problems and because she missed a mandatory meeting. She has failed to demonstrate that the reasons for her firing are untrue or that she would not have been fired for the same infractions had she not also complained about the clocking in and out requirement. And, again, there is no evidence that the City knew about her contact with the EEOC before she was fired.

The City's motion for summary judgment on McKinney's retaliation claim should be **GRANTED**.

### *4. Dismisal for Failure to Serve*

Under Federal Rule of Civil Procedure 4(m), "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

McKinney sued both the EEOC and its investigator. Under Rule 4(i)(1)(A), service on an agency of the United States requires that a copy of the summons and complaint be delivered or mailed to the United States attorney or its designated employee. Service on a United States employee individually or in their official capacity also requires service on the United States, i.e. service on the United States attorney, as well as service on the agency or

employee. Rule 4(i)(2), (3). In other words, absent service on the United States attorney, service has not been perfected.

The proof of service on file with the court shows that the EEOC was served but does not show that the United States attorney or a designated employee was served. ECF No. 6 at 1. The United States Attorney's Office filed an "Advisory Regarding Service of Process" on February 1, 2024. ECF No. 30. That advisory explained that the United States and its employee had not been properly served. Attached to the Advisory was a letter that the United States Attorney's Office sent to McKinney explaining that the United States had not been served and including instructions on how to do so. ECF No. 30-1. The court held a hearing on February 9, 2024, which both McKinney and an Assistant United States Attorney attended. During the hearing, McKinney was placed on notice that she had not served the United States attorney. McKinney has done nothing since to effectuate service on the United States.

Because the United States has not been properly served and because well more than 90 days have elapsed since McKinney filed suit against the United States and its employee, the court recommends that McKinney's claims against the United States and its employee be **DISMISSED without prejudice**.

### 5. *McKinney's Motion for New Trial*

As mentioned above McKinney has filed a motion for new trial. ECF No. 63. Whether the motion is filed under Rule 59(e) or under Rule 60, it should be denied as premature. Judgment has not yet been entered.

### 6. *Conclusion*

Because there are no genuine issues of material fact and because the City is entitled to judgment as a matter of law on all of McKinney's claims against it, the court recommends that the City's Motion for Summary Judgment, ECF No. 56, be **GRANTED**

and that all of McKinney's claims against the City be **DISMISSED with prejudice**.

The court recommends that McKinney's claims against the EEOC and its employee be **DISMISSED without prejudice**.

The court recommends that McKinney's Motion for New Trial be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on April 17, 2025.

_____
Peter Bray
United States Magistrate Judge